IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| LOUIS EUGENE MAUL, *et al.*, | * | |
| Plaintiffs, | * | |
| | * | |
| v. | | Civil Action No. 8:24-2396-AAQ |
| | * | |
| UR M. JADDOU, *et al.*, | * | |
| Defendants. | * | |
| | * | |

******

## MEMORANDUM OPINION AND ORDER

Plaintiffs Louis and Marites Maul challenge the United States Citizenship and Immigration Services' denial of Marites Maul's Application to Register Permanent Residence. Currently before the Court is Defendants' Motion to Transfer the case to the Eastern District of Virginia. ECF No. 16. The Motion to Transfer has been fully briefed, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Also before the Court is Plaintiffs' unopposed Motion to Extend Time for Summons. ECF No. 19. For the reasons discussed below, both Plaintiffs' and Defendants' Motions will be GRANTED.

## BACKGROUND

Mr. and Mrs. Maul filed this suit to challenge the allegedly improper denial of Mrs. Maul's I-485 application, or Application to Register Permanent Residence or Adjust Status. ECF No. 1, at 6-7. Plaintiffs bring their action against Defendant Frank C. Reffel, in his official capacity as former Director of the Norfolk Field Office of the United States Citizenship and Immigration

1

Services (USCIS), and Defendant Ur M. Jaddou, in her official capacity as former Director of USCIS.[1]  ECF No. 1, at 2-3.

According to Plaintiffs' pleadings, Mr. Maul is a United States citizen who resides in the Eastern District of Virginia.  ECF No. 1, at 2; ECF No. 6, at 2.  In August of 2022, Mrs. Maul moved from the Philippines to Virginia on a K-1 Visa as Mr. Maul's fiancé.  ECF No. 1, at 6.  Shortly after marrying Mr. Maul, Mrs. Maul filed an I-485 application to obtain lawful permanent resident status.  *Id.*  Nine months after Mrs. Maul filed her application, the Norfolk USCIS Field Office[2] contacted Mrs. Maul asking for proof that she had undergone a physical examination.  *Id.*  Plaintiffs allege that Mrs. Maul had already provided such proof to the United States Embassy in Manila and to U.S. Customs and Border Protection, which had reportedly sent the documentation to USCIS.  *Id.*  While Plaintiffs were trying to acquire the requested proof, which was due to the Norfolk Field Office on September 1, 2023, USCIS denied Mrs. Maul's I-485 application on July 5, 2023.  *Id.*  Plaintiffs further allege that the Norfolk Field Office later received proof of Mrs. Maul's physical examination on July 21, 2023, which was before the deadline to provide documentation but after USCIS had already denied Mrs. Maul's application.  *Id.*  USCIS gave Mrs. Maul thirty days to leave the United States.  *Id*. at 7.  She has since returned to the Philippines.  *Id*; ECF No. 7, at 1.

---

[1] Ms. Jaddou is no longer in this role.  Kika Scott is currently performing the duties of the Director of USCIS.  *Leadership*, U.S. Citizenship and Immigration Services, https://www.uscis.gov/about-us/organization/leadership (last visited Mar. 6, 2025).

[2] While Plaintiffs refer to a Virginia Beach USCIS Field Office, *see* ECF No. 1, at 6, Defendants note, and Plaintiffs' exhibits show, that the office is in Norfolk, Virginia, and is called the Norfolk Field Office, *see* ECF No. 16-1, at 1 n.1; ECF No. 3-2, at 3.  The Norfolk Field Office is in the Eastern District of Virginia.

Plaintiffs allege that the Norfolk Field Office's denial of Mrs. Maul's application was improper and inconsistent with decisions from other USCIS field offices. ECF No. 1, at 6-7. As relief, Plaintiffs seek a declaratory judgment that Mrs. Maul's I-485 application be granted, an award of fees and costs in pursuing this action, and any further relief the Court deems proper. *Id.* at 8.

Mr. Maul previously brought suit over these same facts—USCIS's denial of Mrs. Maul's I-485 application—against Defendant Reffel in his official capacity in Virginia state court. *See* Dismissal Order at 1, *Maul v. Reffel*, No. 2:23cv529 (E.D. Va. June 10, 2024), ECF No. 7. In that case, Mr. Maul sought only monetary damages as relief. *Id.* at 2. Defendant Reffel removed the state court action to the United States District Court for the Eastern District of Virginia and subsequently filed a Motion to Dismiss, which the District Court granted without prejudice on June 10, 2024. *Id.* at 1.

United States District Judge Elizabeth Hanes interpreted Mr. Maul's claim as arising under the Administrative Procedures Act (APA), which contains a limited waiver of administrative agencies' sovereign immunity and allows "'[a] person suffering legal wrong because of agency action' to obtain 'judicial review thereof' and 'seek[] relief other than money damages' in federal court." *Id.* at 5 (alterations in original) (quoting 5 U.S.C. § 702). However, Judge Hanes did not assess the viability of Mr. Maul's APA claim, as she dismissed the case without prejudice after finding that the district court lacked subject matter jurisdiction over the action. *Id.* at 7. Specifically, Judge Hanes found that (1) the federal district court could not exercise derivative jurisdiction over Mr. Maul's claim because the state court in which Mr. Maul filed lacked jurisdiction over the claim, and (2) Mr. Maul's claim did not fall within the APA's waiver of sovereign immunity because the waiver applies only to claims for non-monetary relief. *Id.* at 5-7.

3

Following the dismissal of Mr. Maul's case in the Eastern District of Virginia, Plaintiffs filed this Complaint in the District of Maryland on August 16, 2024. ECF No. 1. Plaintiffs included with their Complaint a proposed summons for Defendants Jaddou and Reffel, as well as for the U.S. Attorney for the District of Maryland and the Attorney General of the United States, as Federal Rule of Civil Procedure 4(i) requires. ECF No. 1-2. On August 24, 2024, Plaintiffs filed a "Supplement"[3] to their Complaint containing several exhibits, including communications from the Norfolk Field Office, communications from U.S. Customs and Border Protection, and documentation regarding Mrs. Maul's vaccination and visa status. ECF No. 3.

On September 24, 2024, the Court issued an Order noting that Mrs. Maul had failed to sign Plaintiffs' Complaint as required for *pro se* filings under this Court's Local Rules. ECF No. 4. The Court afforded Plaintiffs twenty-eight days "to amend the Complaint to provide their original signatures in compliance with Local Rule 102.1." *Id.* at 1. Plaintiffs filed a copy of their original Complaint signed by both parties (Signed Complaint) on October 16, 2024, which they again labeled as a "Supplement" to their first Complaint. ECF No. 5. Plaintiffs filed a final "Supplement" to their Complaint on October 21, 2024, which consists of a "Statement of Claim" that largely mirrors the content in their original Complaint. ECF No. 6. On October 23, 2024, the Court entered an Order Directing Clerk to Issue Summons, ECF No. 8; the summons were issued that same day, ECF No. 9. On December 11, 2024, Plaintiffs reached out to the Court to relay

---

[3] While supplemental pleadings typically relate to new facts occurring after a complaint has been filed, *see* Fed. R. Civ. P. 15(d); *Dicks v. Flury*, No. 14-cv-1016, 2015 WL 847409, at *2 (D. Md. Feb. 25, 2015), Plaintiffs' "Supplements" concern the same content as the initial Complaint and more closely resemble exhibits or amendments to their Complaint. Though amended complaints typically replace prior complaints, the Court will consider all of Plaintiffs' pleading materials—ECF Nos. 1, 3, 5, and 6—in light of Plaintiffs' *pro se* status. *See, e.g., Dorsey v. Baltimore Cnty. Pub. Schools*, No. 17-cv-1717, 2018 WL 1505787, at *1 n.2 (D. Md. Mar. 27, 2018); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed.") (internal quotation marks and citation omitted).

4

difficulties serving Defendants, stating that the service materials Plaintiffs sent to Defendant Jaddou had been returned to sender and that those sent to Defendant Reffel had gone out for delivery but were returned to the post office. ECF No. 10, at 2. On January 9, 2025, Plaintiffs filed a Motion to Extend Time for Summons. ECF No. 19. Defendants have not opposed Plaintiffs' Motion, and the time for doing so has passed. It was subsequently noted on the docket that Plaintiffs had served Defendant Jaddou on December 6, 2024, and served Defendant Reffel on January 17, 2025. ECF No. 22.

On January 7, 2025, Defendants filed a Motion to Transfer the case to the Eastern District of Virginia and extend the time to respond to Plaintiffs' Complaint until sixty days after the Court decides the Motion to Transfer. ECF No. 16. Plaintiffs opposed Defendants' Motion by filing a Motion to Keep Present Venue on January 9, 2025.[4] ECF No. 20. Defendants filed a Reply in Support of their Motion to Transfer on January 21, 2025. ECF No. 21.

## DISCUSSION

### I.   Motion to Extend Time for Summons

Under Federal Rule of Civil Procedure 4(m), a plaintiff must serve a defendant "within 90 days after the complaint is filed." If a plaintiff does not complete service within the ninety-day period and "the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). A district court may also exercise its discretion to extend time for service even absent good cause. *Gelin v. Shuman*, 35 F.4th 212, 220 (4th Cir. 2022).

---

[4] Defendants interpret this filing as an Opposition to Defendants' Motion to Transfer. ECF No. 21, at 1 n.1. The Court agrees and will treat the filing as an Opposition rather than as an independent motion.

The Court will first consider when Plaintiffs' ninety-day period to serve Defendants began. Then, if an extension is necessary, the Court will determine whether good cause exists to extend Plaintiffs' time for service.

Due to the nature of Plaintiffs' Complaint and other filings, it is not clear when exactly Plaintiffs' Rule 4(m) period started to run. At earliest, the Rule 4(m) period began when Plaintiffs filed their Signed Complaint on October 16, 2024, ECF No. 5—two months after Plaintiffs filed their initial Complaint, ECF No. 1. Plaintiffs filed the Signed Complaint in response to the Court's instruction that they "*amend* the Complaint to provide their original signatures[.]" ECF No. 4, at 1 (emphasis added). As such, the Signed Complaint functions as an amended complaint, which typically tolls the ninety-day Rule 4(m) period. *See, e.g.*, *Want v. Bulldog Fed. Credit Union*, No. 19-cv-2827, 2021 WL 1662456, at *3 (D. Md. Apr. 28, 2021) (counting the Rule 4(m) period from the date plaintiff filed his amended complaint); *Sparks v. Transit Mgt. of C. Maryland, Inc.*, No. 21-cv-1598, 2021 WL 5742336, *2 (D. Md. Dec. 2, 2021) (same). This understanding also accords with the fact that the Court did not order the Clerk to issue the summons until after Plaintiffs filed the Signed Complaint. ECF No. 8. *Cf. Murrill v. Merritt*, No. 17-cv-2255, 2022 WL 4080308, at *9 (D. Md. Sept. 6, 2022) ("[T]he Court concludes that the Rule 4(m) period did not begin to run until . . . [plaintiff] filed the operative third amended complaint . . . [because] the court did not authorize the issuance of summons or truly allow the case to proceed until then.").

Out of an abundance of caution, the Court, in its consideration of Plaintiffs' Motion, will adopt this earliest potential start of the Rule 4(m) period, though there are other tenable dates on which the Rule 4(m) period could have begun.[5] Counting from the date of the Signed Complaint,

---

[5] For example, the Court could reasonably determine that the ninety-day period for service began when Plaintiffs filed the final Supplement to their Complaint on October 21, 2024. *See, e.g.*, *Dorsey*, 2018 WL 1505787, at *1 n.3 ("Even when counting from [plaintiff's most recently filed

6

the ninety-day Rule 4(m) period ended on January 14, 2025. Accordingly, Plaintiffs' December 6, 2024, service of Defendant Jaddou was clearly timely, even if Plaintiffs were not yet aware of this fact when filing their Motion on January 9, 2025. ECF Nos. 19, 22. However, Plaintiffs' January 17, 2025, service of Defendant Reffel occurred three days after the expiration of the ninety-day period.

Though Plaintiffs' service of Defendant Reffel may have been untimely, good cause exists to extend Plaintiffs' time for service. "'Good cause' requires a 'showing of diligence on the part of the plaintiffs.'" *Gelin*, 35 F.4th at 218 (quoting *Attkisson v. Holder*, 925 F.3d 606, 627 (4th Cir. 2019)). A court is more likely to find good cause when "failure of service is due to external factors," such as a defendant's evasion of service or a plaintiff's difficulty in obtaining a defendant's proper address. *Id.* (quoting *Attkisson*, 925 F.3d at 627). *See also Henderson v. S & K Sec. Consultants, Inc.*, No. 21-cv-2484, 2023 WL 1107995, at *1 (D. Md. Jan. 30, 2023). Conversely, "significant periods of inactivity" or a plaintiff's "fail[ure] to seek extension of time before [the] deadlines [has] lapsed" make a court less likely to find good cause. *Gelin*, 35 F.4th at 218 (alterations in original) (quoting *Attkisson*, 925 F.3d at 627).

Here, Plaintiffs have been dilligent in their attempts to serve Defendants. In their Motion and Correspondence with the Court, Plaintiffs explained that they struggled to obtain accurate address information for Defendants and that multiple service attempts were either lost in the mail or returned to sender. ECF No. 10, at 2; ECF No. 19, at 2. Plaintiffs also began their attempts at service promptly after the Clerk issued the summons, and sought assistance from a case administrator, the U.S. Marshalls, and a process server in their efforts to properly serve

---

supplement] . . . well over ninety (90) days have passed."). Under that timeline, Plaintiffs' January 17, 2024, service of Defendant Reffel would have been timely and their Motion currently before the Court would be moot.

7

Defendants. ECF No. 10, at 2; ECF No. 19, at 2. Lastly, Plaintiffs sought an extension of time before the Rule 4(m) deadline had lapsed. ECF No. 19. Given Plaintiffs' significant good faith efforts to timely serve Defendants, the Court finds good cause to extend Plaintiff's time to effect service. *See*, *e.g.*, *Hecker v. Garner*, No. 22-cv-02152, 2023 WL 1415957, at *3 (D. Md. Jan. 31, 2023) (finding good cause where Plaintiff had "shown her extensive efforts to serve Defendant"); *LPUSA, LLC v. Wheelz Up Garage, Inc.*, No. 24-cv-1385, 2024 WL 4252986, at *2 (D. Md. Sept. 20, 2024) (finding that plaintiff's good faith, unsuccessful attempts to serve defendant constituted reasonable and diligent efforts to effect service and amounted to good cause to extend the Rule 4(m) deadline); *G&G Closed Cir. Events, LLC v. Elevation Cigars & Lounge, LLC*, No. 23-cv-2477, 2024 WL 4287908, at *2 (D. Md. Sept. 25, 2024) (same). *Cf. Grier v. U.S. Dep't of Hous. and Urb. Dev.*, No. 21-cv-2165, 2022 WL 17467671, at *2 (D. Md. Dec. 6, 2022), aff'd sub nom. *Grier v. HUD*, No. 23-1310, 2023 WL 6421120 (4th Cir. Oct. 2, 2023) (finding plaintiff failed to establish good cause when she did not make multiple attempts to effectuate service and did not seek an extension of time prior to the expiration of the deadline); *Attkisson*, 925 F.3d at 627 (finding plaintiffs failed to establish good cause because plaintiffs' "significant periods of inactivity" throughout the litigation showed a lack of diligence in pursuit of their claims). Accordingly, Plaintiffs' Motion to Extend Time for Summons, ECF No. 19, is GRANTED.

## II. Motion to Transfer

Having extended Plaintiffs' time for service, the Court will now assess whether, as Defendants assert, the Eastern District of Virginia is the better venue for this case moving forward.

A plaintiff may file suit against an officer or employee of the United States in "any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of

the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1).  However, "[a] court may transfer a civil action to any other district '[f]or the convenience of parties and witnesses, in the interest of justice,' as long as the transferee district is one where the case 'might have been brought.'"  *Manne v. Jaddou*, No. 21-cv-1092, 2022 WL 102853, at *6 (D. Md. Jan. 11, 2022) (second alteration in original) (quoting 28 U.S.C. § 1404(a)). A party moving to transfer a case under § 1404(a) must establish "both (1) that the plaintiff could have brought the action in the proposed transferee court and (2) that the action should have been brought there."  *Id*.  Ultimately, however, "whether to transfer is within the district court's discretion."  *Bulut v. U.S. Dept. of Homeland Sec.*, No. 23-cv-00995, 2023 WL 5153638, at *1 (D. Md. Aug. 10, 2023).

Defendants have shown that the Eastern District of Virginia is a viable venue as it is (1) where Defendant Reffel resides in his official capacity, *see* ECF No. 1, at 3; (2) where the decision-making process for adjudicating Mrs. Maul's application occurred, *see Manne*, 2022 WL 102853, at *6 ("The decisionmaking process for adjudicating Plaintiffs' visa applications occurs in USCIS service centers and field and regional offices, and any delay or improper denial—that is the 'events or omissions' giving rise to their claims—occurred in the judicial districts covering those offices."); and (3) where Mr. Maul resides, *see* ECF No. 1, at 2.  *See also* ECF No. 16-1, at 3-4.

The more difficult question is whether Plaintiffs *should* have filed their claim in the Eastern District of Virginia rather than the District of Maryland.  When considering this aspect of a motion to transfer under § 1404(a), district courts analyze four factors: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice."  *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015).

A. **The Weight Accorded to Plaintiff's Choice of Venue.**

"A plaintiff's choice of forum is typically afforded deference." *Manne*, 2022 WL 102853, at *7. However, such deference may not be appropriate when "none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in controversy." *Chakrabarti v. U.S. Citizenship and Immigr. Servs.,* No. 21-cv-1945, 2021 WL 4458899, at *4 (D. Md. Sept. 29, 2021) (quoting *U.S. ex rel. Salomon v. Wolff*, 268 F. Supp. 3d 770, 774 (D. Md. 2017)). *See also Lebbin v. Transamerica Life Ins. Co.*, No. 17-cv-1870, 2018 WL 2013054, at *2 (D. Md. Apr. 30, 2018) ("The deference accorded to the plaintiff's choice of forum should be proportional to the relationship between the forum and the cause of action."). "In particular, when a plaintiff chooses to bring suit in a forum that is not plaintiff's home forum, deference is less likely." *Chakrabarti*, 2021 WL 4458899, at *4.

Here, Plaintiffs' choice of forum demands little deference. The District of Maryland is not Plaintiffs' home forum. Additionally, the conduct Plaintiffs complain of—the allegedly improper adjudication of Mrs. Maul's I-485 application—occurred at the Norfolk USCIS Field Office in Virginia, not in Maryland. *See, e.g.*, *Chenari v. U.S. Citizenship and Immigr. Servs.*, No. 23-cv-1649, 2024 WL 895111, at *2 (D. Md. Mar. 1, 2024); *Chakrabarti*, 2021 WL 4458899, at *6; *Manne*, 2022 WL 102853, at *6. The presence of the USCIS headquarters in Maryland is the only connection between this District and Plaintiffs' case. As such, Plaintiffs' decision to sue in this venue does not carry significant weight.

B. **Witness Convenience and Access**

As neither witnesses nor administrative records relevant to Plaintiffs' claim are located at the USCIS headquarters in Maryland, this factor weighs in favor of transfer. Though the location of witnesses is generally "not a significant factor" in cases involving agency action, the "location

10

of the administrative record . . . carries some weight." *Chakrabarti*, 2021 WL 4458899, at *4 (quoting *Melnattur v. U.S. Citizenship & Immigr. Servs.*, No. 20-cv-3013, 2021 WL 3722732, at *7 (D.D.C. Aug. 23, 2021)). Any administrative records relevant to Plaintiffs' claim are located at the Norfolk Field Office where Mrs. Maul's application was evaluated. *See id.* at *4 ("[A]ny relevant administrative records will be located in the service centers or field offices where Plaintiffs' applications are currently pending, which is to say all the records are outside of Maryland."). *See also Manne*, 2022 WL 102853, at *7; *Chenari*, 2024 WL 895111, at *2-3. Additionally, while witness convenience is a less significant factor in agency claims like this one, the USCIS personnel most familiar with Mrs. Maul's application are also located at the Norfolk USCIS Field Office. *See Chakrabarti*, 2021 WL 4458899, at *4. Accordingly, witness convenience and access are best served by transfer.

### C. Convenience of the Parties

Because Plaintiffs do not live in Maryland and their claim has no ties to Maryland, Plaintiffs enjoy no convenience in litigating their claim here. *See, e.g.*, *Reyes v. U.S. Citizenship and Immigr. Servs.*, No. 24-cv-316, 2024 WL 1806515, at *3 (D. Md. Apr. 25, 2024) (finding that "[the District of Maryland] presents no conveniences for [p]laintiff" when both plaintiff and the USCIS Field Office that denied his petition were based in Virginia); *Fuentes Ayala v. U.S. Citizenship and Immigr. Servs.*, No. 24-cv-00550, 2024 WL 4165272, at *2 (D. Md. July 30, 2024) (finding that "the convenience of the parties is also best served by [transfer]" when neither plaintiff nor the relevant USCIS field office were based in District of Maryland). Rather, Defendants seek transfer of this case to Mr. Maul's home district, which they argue is a more convenient location for Plaintiffs. ECF No. 16-1, at 6 (citing *Aishat v. U.S. Dep't of Homeland Sec.*, 288 F. Supp. 3d 261, 270 (D.D.C. 2018)). Plaintiffs, in response, contend only that both venues are inconvenient,

11

as Mr. Maul lives far away from both courts. ECF No. 20, at 4. They do not claim that the District of Maryland is more convenient for their litigation than the Eastern District of Virginia. Accordingly, this factor also weighs in favor of granting Defendant's Motion for Transfer.

### D. Interest of Justice

The interest of justice "is broad, encompassing all the factors beyond Plaintiffs' preferred forum and the convenience of witnesses and parties[.]" *Chakrabarti*, 2021 WL 4458899, at *5. More specifically, this factor "encompasses public interest factors aimed at systemic integrity and fairness." *Menk v. MITRE Corp.*, 713 F. Supp. 3d 113, 139 (D. Md. 2024) (internal quotation marks omitted) (quoting *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 721 (E.D. Va. 2005)).

Plaintiffs believe that this case will be "biased by previous rulings" if transferred to the Eastern District of Virginia where Mr. Maul's last complaint was dismissed without prejudice. ECF No. 20, at 4. Courts generally do not consider individualized concerns when weighing the interests of justice. *See*, *e.g.*, *Karaoglu v. U.S. Dept. of Homeland Sec.*, No. 23-cv-749, 2023 WL 4627277, at *3 (D. Md. July 19, 2023) ("Nor has Plaintiff identified a significant public interest in the final 'interest of justice' category, focusing on his own interest in avoiding further delay and his potential difficulty in securing counsel."); *Chakrabarti*, 2021 WL 4458899, at *5 ("[W]hen Plaintiffs speak of the interest of justice, it is primarily from their personal standpoint. . . on the larger picture, Plaintiffs come up short."). Nonetheless, the factor "allows a court to consider many things." *Kimber v. Plus3 IT Sys., LLC*, No. 18-cv-3046, 2019 WL 1518970, at *6 (D. Md. Apr. 5, 2019)) (internal quotation marks and citation omitted).

Plaintiffs' concerns do not weigh against transfer in this case. Plaintiffs are not concerned with "bias" as the Court typically understands it: "a favorable or unfavorable disposition or opinion

12

that is somehow wrongful or inappropriate, either because it is undeserved, . . . rests upon knowledge that the subject ought not to possess[,] . . . [or] is excessive in degree." *Liteky v. United States*, 510 U.S. 540, 550 (1994). Rather, Plaintiffs seem worried that the Eastern District of Virginia will issue a judgment against them as a matter of precedent. Plaintiffs' argument misunderstands that court's prior decision; Mr. Maul's claim was never adjudicated on the merits in the Eastern District of Virginia. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013) ("A dismissal for . . . [a] defect in subject matter jurisdiction[] must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits."). The court held only that it lacked subject matter jurisdiction over Mr. Maul's case because Mr. Maul sought only money damages and initially filed in a state court that lacked jurisdiction over his claim. *See* Dismissal Order at 5-7, *Maul v. Reffel*, No. 2:23cv529 (E.D. Va. June 10, 2024), ECF No. 7. Plaintiffs have already addressed these two issues in their current filing by seeking declaratory relief and filing directly in federal court. Given the circumstances, the interest of justice does not demand that Plaintiffs retain venue in the District of Maryland.

There are, however, public interest concerns that weigh in favor of transfer. To begin, Defendants argue, and the Court agrees, that courts have an interest in having local controversies decided at home. ECF No. 16-1, at 7; *Chakrabarti*, 2021 WL 4458899, at *5 ("First and foremost, courts have an interest in having local controversies decided at home."). The allegations in this case arise entirely from actions taken at the Norfolk USCIS Field Office. Because this is a localized controversy, it is best handled by the district court that covers the relevant office.

Additionally, as this Court has noted, if all plaintiffs challenging a local USCIS decision were permitted to maintain venue in Maryland "simply because USCIS has moved its headquarters

13

here, this District 'could become deluged with immigration cases.'" *Manne*, 2022 WL 102853, at *9 (quoting *Melnattur*, 2021 WL 3722732, at *8). This Court has observed:

> Given the thousands – perhaps better said, tens of thousands of visa application cases that might descend upon this District should the Court decide that this particular case belongs here, one or more members of this Court may be required to become full-time reviewers of these visa application cases, an outcome which would obviously derogate from the other important matters the Court must attend to.

*Chakrabarti*, 2021 WL 4458899, at *6. Adopting this reasoning, the interest of justice is better served if Plaintiffs' claim is adjudicated in the Eastern District of Virginia.

Because Plaintiffs' choice of venue demands little deference and the other factors all weigh in favor of transfer, the Court will grant Defendants' Motion. Such a decision is consistent with this Court's previous holdings in similar cases. *See, e.g.*, *Bulut*, 2023 WL 5153638, at *1 ("As this court has consistently determined, 'the fact that USCIS is headquartered here . . . alone is insufficient to establish proper venue in Maryland.'") (quoting *Dhimar v. Blinken*, No. 22-cv-2175, 2022 WL 17540972, at *2 (D. Md. Dec. 8, 2022)); *Karaoglu*, WL 4627277, at *3 (holding that, when none of plaintiff's claims against USCIS related to Maryland, "[a]lthough Maryland is a possible venue, it is not the proper or most convenient venue and is therefore an inconvenient and unsuitable forum to adjudicate Plaintiff's claims"); *Manne*, 2022 WL 102853, at *9 ("The Court therefore concludes that on balance the interests at stake favor transferring these cases to the federal district courts where the [relevant] USCIS service centers [are located].").

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion to Extend Time for Summons, ECF No. 19, is GRANTED, and Plaintiffs' window for proper service is extended to January 17, 2025.

Defendants' Motion to Transfer Venue, ECF No. 16, is also GRANTED. This civil action will be transferred to the United States District Court of the Eastern District of Virginia pursuant

to 28 U.S.C. § 1404(a). Defendants' time to respond to Plaintiffs' Complaint is extended by sixty days from the date the case is docketed in the transferee court.

So ordered.

Date: March 11, 2025

                                                                /s/
                                       Ajmel A. Quereshi
                                       U.S. Magistrate Judge